[Civ. No. 14858. Fourth Dist., Div. One. Sept. 20, 1978.]

W. H. WALKER et al., Plaintiffs and Appellants, v.
SIGNAL COMPANIES, INC., et al., Defendants and Appellants.

**COUNSEL**

Gray, Cary, Ames & Frye, Terry D. Ross and William McCurine, Jr., for Plaintiffs and Appellants.

Latham & Watkins, Alan N. Halkett and A. Victor Antonla for Defendants and Appellants.

## OPINION

**WIENER, J.**—This case centers around the written contract for the construction of a house in the residential development, Coronado Cays, between Coronado Landmark, Inc., as contractor, and plaintiffs W. H. Walker and D. Jane Walker (Walkers).

Walkers sued the Signal Companies, Inc. (Signal), Signal Landmark, Inc. (Signal Landmark), Cedric Sanders Corp. (Sanders), Coronado Landmark, Inc. (Coronado Landmark) dba Coronado Cay Co. and Jack Conover (Conover) for breach of contract and fraud. Mrs. Walker sued for intentional and negligent infliction of emotional distress. After a jury trial, judgments in the sum of $11,928 and $5,000 were entered in favor of the Walkers against Coronado Landmark and Signal Landmark on the breach of contract and fraud causes of action respectively. Punitive damages of $100,000 were imposed against Coronado Landmark and $115,000 against Signal Landmark. A judgment in the sum of $400 was rendered for Mrs. Walker on her cause of action for negligent infliction of emotional distress against Coronado Landmark, Signal Landmark and Conover, and in favor of all defendants on her cause of action for intentional infliction of emotional distress. A judgment of nonsuit was entered for Conover on the first cause of action and Signal and Sanders on all causes of action.

Coronado Landmark and Signal Landmark appeal from the judgments for breach of contract, fraud and punitive damages. Walkers appeal from the judgment of nonsuit in favor of Signal and Sanders. After our examination of issues raised in both appeals, we conclude the judgment for compensatory damages should be modified and merged into a single judgment of $8,414 and, except as so modified, all judgments should be affirmed.

### THE SIGNAL LANDMARK AND CORONADO LANDMARK APPEAL

#### *Breach of Contract*

*Sufficiency of the Evidence*

The Walkers' breach of contract claim is based on the building construction contract of August 18, 1972, and is premised on the untimely completion of the residence. The defendants Coronado Landmark and Signal Landmark contend there is insufficient evidence to support that

judgment. We approach our task keeping in mind that all conflicts in the evidence must be resolved in favor of the judgment and all reasonable inferences indulged in to uphold the verdict. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

The Walkers sold their residence in Northern California on October 18, 1971, as part of their program to relocate in the San Diego area after Mr. Walker's retirement. On July 16, 1972, they signed a contract to buy a house for $77,400 in the Coronado Cays development in Coronado. They gave their check for $1,000 to Charles Frederick, who acknowledged receipt on behalf of Coronado Cay Company and Signal Landmark, whom he believed to be its general partner. The contract was approved on July 21, 1972, by Jack Conover, a vice president and director of sales and marketing of Coronado Landmark. Frederick had filled in the terms of the sale in the blanks of the form contract including the statement, "Home to be completed by December 31, 1972." Mr. Walker was aware of the necessity for construction to be completed within the period which would permit a deferral of all or substantially all of the capital gains tax which would otherwise fall due because of the sale of his first residence.[1] He requested a specific date for completion to be set out in the contract.

The Walkers returned to Coronado on August 18, 1972. When they went to the Coronado Cays development, they were advised by an employee of Coronado Landmark that it was necessary for them to sign another contract before construction of their house could start. They then signed as owners another boilerplate contract entitled Building Construction Contract, with Coronado Landmark as contractor in which they agreed to pay $38,500 for the *construction* of the house previously described in the real estate purchase agreement. Separate escrow instructions for the sale of the land and construction loan were signed on that date with the Bank of America as escrow agent. They were told by a representative of the bank an 80 percent secured real estate loan had been approved.

The construction contract provided for commencement of construction within five days after the owner obtained financing and the issuance of a building permit; construction was to be completed within 180 calendar

---

[1] Internal Revenue Code section 1034 in 1972 provided for the recognition of gain from the sale of a principal residence only to the extent the adjusted sales price of the taxpayer's old residence exceeded the cost to him of purchasing a new residence. Construction of new residence must begin before the expiration of one year from the date of the sale of the old residence and must be completed and occupied by the taxpayer as his principal residence within 18 months beginning with the date of such sale.

days from commencement subject to excusable delays; and time was of the essence to both parties. The building permit was issued on August 11, 1972; construction started on October 3, 1972, one day before the close of the escrow.

The house had to be completed by April 1, 1973, i.e., 180 days after October 3, 1972, unless extended for excusable delays. The last day for the beneficial income tax consequences was April 17, 1973.

Construction proceeded slowly. Trenching was started on October 3; the slab was completed on November 19, 1972. No further progress was made until the last week of January 1973. By March 14, 1973, the electrical, heating, framing and roofing work had been inspected and approved by the City of Coronado. However, even as late as April 17, 1973, the house was still not finished. Numerous doors were not installed, considerable painting had to be done, no carpets or floor coverings had been installed and the toilets were not hooked up. We will not set out the 41 items listed by Mr. Walker describing the incomplete status of the residence as of that date when he communicated his unhappiness to Signal Landmark. According to his testimony, construction was still incomplete in the early part of August with substantial completion occurring at the end of August. He signed the notice of completion on September 4.

The primary factual question presented to the jury was whether the date for completion was extended because of excusable delays. After our review of each item in the contract which permits delay, we conclude there is substantial evidence to support the verdict. Part of the delay was allegedly due to a lumber shortage. Evidence was presented that sufficient lumber was available at the job site to frame the house following the pouring of the slab had the construction project been organized properly. There was only one possible day of delay because of labor shutdowns. Defendants rely primarily on the inclement weather, the 40 days of "measurable" rain in Coronado. A vice president of Signal Landmark in charge of construction testified to ". . . several days of inclement weather preventing work." He admitted that it was unfortunate that the usual and customary practice of maintaining a log to determine the effect of the weather on the progress of construction was not followed. He also admitted that rain itself might not be a factor depending on the stage of completion of construction. In light of the quality of the testimony as to bad weather and the effect of that weather on the construction of

plaintiffs' house, the jury was entitled to give. it little weight. There was substantial evidence for the jury to decide the contract was breached.

*Jury Instructions*

■ Defendants contend the trial court erred in instructing the jury as a matter of law that April 17, 1973, was the last date by which the residence was required to be in a condition to be used by plaintiffs as their principal residence.[2]

Defendants' argument is unclear. If they are arguing the instruction was improper because April 17, 1973, was not the correct date for tax purposes (Int. Rev. Code, § 1034), the argument is without merit. The provisions of the statute as applied to the Walkers result in the mathematical determination that April 17, 1973, was the last date they could occupy the house as their principal residence and obtain a deferral of all or a portion of their tax obligation.

If their argument is based on the notion there is some ambiguity in the instruction and the jury was instructed as a matter of law that April 17, 1973, was the date for completion of the residence under the contract, thereby depriving the jury of the opportunity to decide this issue and consider the evidence on excusable delays, this argument is also without merit. This case was ably tried by counsel. The tax ramifications of the real estate transaction were repeatedly referred to before the jury. The phrase "principal residence" as words of art in the context of the tax statute and in the context of the trial were well known to the jury by the time it was instructed on the law. The alleged ambiguity in this instruction does not rise to the level of error.

*Compensatory Damages*

■ Defendants contend the compensatory damage award of $11,982 is excessive. We agree.

---

[2]The jury instruction provided: "As a matter of law you are instructed that April 17, 1973 was the date by which the Coronado Cay residence was required to be in a condition such that same could reasonably be used by plaintiffs as their principal residence. In determining whether the house was in such a condition you will take into account the state of construction and the physical condition of the premises on that date, and whether the same could have reasonably been occupied by the plaintiffs as their permanent residence."

■ The measure of damages for breach of contract to construct improvements on real property where the work is to be done on plaintiff's property is the reasonable cost to the plaintiff to finish the work in accordance with the contract. (See, e.g., *Jones* v. *Kvistad* (1971) 19 Cal.App.3d 836, 843 [97 Cal.Rptr. 100]; *Kitchel* v. *Acree* (1963) 216 Cal.App.2d 119 [30 Cal.Rptr. 714].) Plaintiffs, however, were not required to terminate their contract with the defendants and complete the project themselves. They had every right to expect the defendants would complete the contract in the manner as required by its terms.

■ The trial court properly instructed the jury on general damages for breach of contract as those which would naturally arise from the breach or which might have been reasonably contemplated or foreseen by the parties at the time they contracted as a probable result of the breach. (See Civ. Code, § 3300; *Hunt Bros. Co.* v. *San Lorenzo, etc. Co.* (1906) 150 Cal. 51, 56 [87 P. 1093].) The trial court also included in the jury instruction reference to special damages which could be recovered if the circumstances were known or should have been known to the other party at the time he entered into the contract, i.e., the possible adverse tax impact if the residence were not completed in a timely fashion.

The items of damage which plaintiffs argue fully support the verdict are: (1) expenses for travel, meals, lodging and phone calls; (2) interest expenses on their Coronado residence for which they did not receive any benefit and interest expense on their tax liability; (3) lost rental income from their Coronado residence; (4) lost rental income from their temporary residence; (5) loss of property value because of misplacement of masonry walls; (6) medical bills and general damages relating to Mrs. Walker's claim; and (7) the adverse tax consequences.

We are able to find support in the record for items (1) $1,782; (5) $1,000—misplacement of walls resulting in loss of approximately one foot of land at $1,000 a front foot; and (7) $5,632.

As to item (2), the payment of interest on the loan for the Coronado residence is not properly an item of damage to the Walkers. It is an expense they would have incurred regardless of their occupancy. The item of damage which does relate to this argument is the expense they incurred in occupying other premises. There was no evidence, however, as to the reasonable rental for their temporary residence either to compute their additional personal expense relating to the delay or their loss of income because they could not rent those premises. Item (3)

cannot be included because the Walkers could not, under the tax statute, both defer capital gains taxes and rent their Coronado home. Item (6) must be excluded because those sums fall within the claim of damages by Mrs. Walker relating to the negligent infliction of emotional distress. There is a factual basis for damages properly measured by the breach of contract in the sum of $8,414 only. The judgment is so modified. (See Code Civ. Proc., § 43.)

*Fraud*

*Sufficiency of the Evidence*

■ The plaintiffs' claim of fraud is based upon their contention the conduct inducing the contractual relationship was tortious starting with the defendants' initial fraudulent intention not to perform within the time specified in the contract and continuing thereafter.

The defendants contend there is insufficient evidence on two of the requisite elements of fraud to sustain the verdict. (See Civ. Code, §§ 1572, 1709, 1710; *Seeger* v. *Odell* (1941) 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291].) They argue there was (1) no intentional false promise and (2) no justifiable reliance.

The jury had before it a pattern of behavior by the defendants starting with the first contract in July, a second contract in August, a letter in September from Conover, a vice president of Coronado Landmark, guaranteeing completion of the house between March 22 and 29, 1973, representations in December 1972 by Coronado Landmark's superintendent of construction that the project would be given priority and inexplicable delays in actual construction, all of which was consistent with an intention not to complete the contract according to its terms. The evidence on this issue was obviously conflicting. On a number of occasions there was a flurry of activity on the project. The fact the Walkers ultimately received a well-built house in a lovely area does not eliminate the substantial evidence which the jury considered to reasonably conclude the defendants were guilty of fraud.

Defendants argue the provisions of the contract permitting delay negate the reasonableness of plaintiffs' reliance on a specified date for completion. Because plaintiffs should have been aware completion was possible on a date other than that provided in the contract, reliance by the plaintiffs on the representations made by each of the agents of the

defendants was unreasonable. Although the Walkers were experienced persons in the construction of a house and may have suffered delay in the building of their prior residence, no reason is presented in this case for them to have disbelieved the statements made by the defendants.[3] To decide otherwise would be to generalize that in the construction of all houses, substantial delay is the rule and timely performance by the contractor the exception.

*Damages for Fraud*

█ The defendants attack the $5,000 fraud judgment as excessive and duplicative of the compensatory damages awarded for breach of contract. We agree.

Damages for fraud (deceit) under Civil Code section 1709 are "any damage which he thereby suffers." This rule allows for restitutional loss. (See *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 111 [128 Cal.Rptr. 901].)[4] It is an amount which will compensate for all the detriment caused thereby, whether it could have been anticipated or not. (Civ. Code, § 3333; *Gudger* v. *Manton* (1943) 21 Cal.2d 537, 555 [134 P.2d 217].) A party may recover consequential damages resulting from his acts in reliance on the other party's misrepresentations. (*Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 490, fn. 6 [275 P.2d 15].) The same damages, however, cannot be on different theories. (See Civ. Code, § 3358; *Bezaire* v. *Fidelity & Deposit Co.* (1970) 12 Cal.App.3d 888 [91

---

[3]Defendants also contend as error the failure of the trial judge to permit evidence on the delay encountered by the plaintiffs in the construction of other houses. Although this evidence may have had some relevance to the issue of reliance, we believe no prejudicial error occurred by its exclusion.

[4]The jury instruction given by the trial judge for fraud and deceit was BAJI No. 12.56 (5th ed. 1975 pocket pt.) page 129, modified, which included: "(a) amounts actually and reasonably expended in reliance upon the fraud," and "(b) an amount which would compensate the plaintiff for loss of use and enjoyment of the property to the extent that any such loss was proximately caused by the fraud." This edited version of BAJI No. 12.56 was proper to the extent the "out of pocket" rule of damages for fraud in the purchases, sale or exchange of property (Civ. Code, § 3343; *Bagdasarian* v. *Gragnon* (1948) 31 Cal.2d 744 [192 P.2d 935]) was omitted. The Walkers did not claim any difference between the actual value of their Coronado property and the price paid by them for it.

We note that part (b) of the instruction is identical to Civil Code section 3343, subdivision (a)(2), which applies solely to *sellers* of real property. This error in the instruction has not been raised on appeal nor do we view it as prejudicial in light of our discussion of the damages caused by the fraud. (See BAJI No. 12.56 (6th ed. 1977), com., p. 499; *Channell* v. *Anthony* (1976) 58 Cal.App.3d 290 [129 Cal.Rptr. 704].)

Cal.Rptr. 142]; *Hayman* v. *Shoemake* (1962) 203 Cal.App.2d 140, 152 [21 Cal.Rptr. 519].)

When we search the record for some factual basis for the judgment based on fraud, we are unable to find any item not otherwise included within the compensatory award for breach of contract. Only one compensatory award for damages in favor of the plaintiffs is proper and, accordingly, we modify the judgment.

*Punitive Damages*

*Propriety of Punitive Damages*

■ Defendants contend plaintiffs are not entitled to punitive damages because their action is one for breach of contract and not for fraud. Punitive damages are not recoverable in an action for breach of contract no matter how wilful, malicious or fraudulent the breach. (Civ. Code, § 3294; *Crogan* v. *Metz* (1956) 47 Cal.2d 398, 405 [303 P.2d 1029].) They may, however, "[b]e awarded where a defendant fraudulently induces the plaintiff to enter into a contract. [Fn. omitted.] (*Kuchta* v. *Allied Builders Corp.,* 21 Cal.App.3d 541, 549 [98 Cal.Rptr. 588]; *Horn* v. *Guaranty Chevrolet Motors,* 270 Cal.App.2d 477, 484 [75 Cal.Rptr. 871].) The words 'oppression, fraud, or malice' in Civil Code section 3294 being in the disjunctive, fraud alone is an adequate basis for awarding punitive damages. (*Miller* v. *National American Life Ins. Co., supra,* 54 Cal.App.3d 331, 336 [126 Cal.Rptr. 731]; *Horn* v. *Guaranty Chevrolet Motors, supra,* 270 Cal.App.2d 477, 484 [75 Cal.Rptr. 871].)" (*Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 135 [135 Cal.Rptr. 802].) Although the contract may fix the compensation, it does not prevent recovery of exemplary damages. (See *Esparza* v. *Specht* (1976) 55 Cal.App.3d 1 [127 Cal.Rptr. 493]; *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 400 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]; *Wetherbee* v. *United Insurance Co. of America* (1968) 265 Cal.App.2d 921, 928 [71 Cal.Rptr. 764]; *Sharp* v. *Automobile Club of So. Cal.* (1964) 225 Cal.App.2d 648 [37 Cal.Rptr. 585]; *Acadia, California Ltd.* v. *Herbert* (1960) 54 Cal.2d 328 [5 Cal.Rptr. 686, 353 P.2d 294]; *Chelini* v. *Nieri* (1948) 32 Cal.2d 480, 487 [196 P.2d 915].) The application of this rule which permits punitive damages where both fraud and breach of contract exists is only consistent with the underlying policy for the application of punitive damages. (Civ. Code, § 3294.)

*Excessiveness of the Punitive Damages*

 Defendants also contend the punitive damages are excessive and clearly the result of passion and prejudice. No challenge has been made to the jury instructions given on the issue of punitive damages which properly described the fraud, malice or oppression required under Civil Code section 3294. At the time he denied the motion for new trial, the trial judge said the jurors had heard evidence that the "Walkers were put upon by these corporations . . . they weren't treated fairly . . ." and ". . . that the collective conscience [of the community] speaking through that jury said that this kind of conduct is going to be punished by an award of punitive damages. . . ."

 Punitive damage awards can be reversed as excessive only when the entire record viewed most favorably to the judgment indicates the award was rendered as the result of passion and prejudice. (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 65 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) To reverse, an appellate court must conclude " '. . . the recovery is so grossly disproportionate as to raise a presumption that it is the result of passion or prejudice.' " (*Schroeder* v. *Auto Driveaway Co.* (1974) 11 Cal.3d 908, 919 [114 Cal.Rptr. 622, 523 P.2d 662].)

The factors to be considered in assessing the award include the nature of the defendant's acts, the amount of compensatory damages awarded and the wealth of a particular defendant. (See *Neal* v. *Farmers Insurance Exchange* (1978) 21 Cal.3d 910, 928 [148 Cal.Rptr. 389, 582 P.2d 980].) Generally, the more reprehensible the act, the greater the appropriate punishment. However, an act of considerable reprehensibility will not justify a proportionately high amount of punitive damages if the actual harm suffered thereby is small. (*Id.,* at p. 928.) To accomplish the statutory purpose (Civ. Code, § 3294), there must be a direct relationship between the amount of punitive damages and the wealth of the wrongdoing defendant. (*Bertero* v. *National General Corp., supra,* 13 Cal.3d 43, 65.)

 When we consider the reprehensibility of the defendants, we cannot overlook the comments of the trial judge to which reference has previously been made. What may now appear from the record to be a mere delay in a construction contract was perceived by 12 jurors and a trial judge as a planned fraudulent scheme resulting in actual damages to

the Walkers. An evaluation of the events must be made in human terms giving proper respect to those who listened to the evidence and observed the witnesses.

When we examine the amount of the compensatory award as contrasted with the amount of punitive damages, we cannot conclude this was in excess of what a jury might determine as reasonable in light of all the circumstances of this case. A rigid formula is not involved; rather, a fluid process of adding or subtracting depending on the nature of the acts and the effect on the parties and the worth of the defendants. Juries within this framework have a wide discretion in determining what is proper. (See *Wetherbee* v. *United Ins. Co. of America, supra,* 18 Cal.App.3d 266, 271.) When we compare the punitive damages against the wealth of each defendant, less than 1 percent of gross assets at book value of each defendant, the amounts assessed cannot be classified as excessive as a matter of law.

### Liability of Signal Landmark

*Compensatory Damages*

Signal Landmark contends there is insufficient evidence to establish its liability either as a party to the contract or as an agent of Coronado Landmark. It is difficult to determine in the present case whether the jury determined Signal Landmark's liability on the basis of its direct involvement as a principal or its actions as an agent for Coronado Landmark. The evidence is sufficient to sustain the judgment on either basis.

Signal Landmark was directly involved in the subject real estate transaction from the time it started to its conclusion. Signal Landmark's direct participation consisted of, but was not limited to, the following: (1) the initial real estate purchase agreement was signed by Frederick, a sales agent of Coronado Landmark on behalf of Signal Landmark; (2) the brochure and advertisements describing Coronado Cays given to prospective purchasers to induce sales described the development as a development of Signal Landmark, one of the Signal Companies; (3) Signal Landmark did the accounting for Coronado Landmark and certain of the employees of Coronado Landmark were paid by Signal Landmark. Progress payments on construction by Coronado Landmark were sent to

an office of Signal Landmark in Santa Ana; (4) when Mr. Walker found it necessary to meet with company representatives to expedite construction of his house, he would confer with officers of Signal Landmark and on one occasion, met in the offices of Signal Landmark in Santa Ana.

The same evidence as to Signal Landmark was also relevant on the issue of either actual or ostensible agency. (See Civ. Code, §§ 2299, 2300, 2316, 2317.) Whether actual or ostensible agency exists is a question of fact to be determined by the trier of fact. (*Yanchor* v. *Kagan* (1971) 22 Cal.App.3d 544, 550 [99 Cal.Rptr. 367].) An ostensible agency may be implied from the circumstances of a particular case. (*Kuchta* v. *Allied Builders Corp., supra,* 21 Cal.App.3d 541, at pp. 547-548.) The jury was not required to place the evidence into specific pigeonholes and make special findings as to the status of Signal Landmark as a principal, actual agent or ostensible agent. By necessity, the evidence on these issues was overlapping. The conclusion by the jury is supported by the evidence.

*Punitive Damages*

 Signal Landmark contends further that even if it is liable for compensatory damages under no circumstances may punitive damages be awarded against it. Punitive damages may not be imposed unless there is substantial evidence to show that Signal Landmark knowingly authorized, directed or ratified Coronado Landmark's fraudulent conduct. (See *Ebaugh* v. *Rabkin* (1972) 22 Cal.App.3d 891, 895 [99 Cal.Rptr. 706].)

We have previously discussed the involvement by Signal Landmark in the subject transaction. The participation by management and supervisorial personnel of Signal Landmark is sufficient to sustain liability for punitive damages. The actions of Coronado Landmark initiating the real estate purchase by the Walkers and the events that occurred after construction started were approved by persons at the management level of Signal Landmark. Punitive damages for the fraudulent acts of agents or employees are proper when awarded against the party responsible for the fraud including those parties who ratify the fraud after its commission. (See *Rosenberg* v. *J. C. Penney Co.* (1939) 30 Cal.App.2d 609, 623 [86 P.2d 696].) Corporations should not remain indifferent to the actions of their officers who act in a fraudulent manner with resultant loss to the person with whom they have dealt.

## The Walkers' Appeal

*Judgment of Nonsuit*

■ Code of Civil Procedure section 581c permits a trial court to grant a judgment of nonsuit after the presentation of evidence to the jury. It "may be granted only where, disregarding conflicting evidence on behalf of the defendants and giving to plaintiff's evidence all the value to which it is legally entitled, therein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff." (*O'Keefe* v. *South End Rowing Club* (1966) 64 Cal.2d 729, 733 [51 Cal.Rptr. 534, 414 P.2d 830, 16 A.L.R.3d 1], quoting from *Reynolds* v. *Willson* (1958) 51 Cal.2d 94, 99 [331 P.2d 48].)

*The Sanders Judgment*

■ The broad brush used by plaintiffs in an effort to involve Sanders is based primarily on its name being present on the subdivision public report (Bus. & Prof. Code, § 11000 et seq.) delivered to the Walkers. The report stated that Sanders was the general partner in the real estate project. There is no evidence, however, the Walkers relied in any manner upon that name nor was there any evidence they believed or were under the impression they were dealing with agents of that corporation. During the relevant period, Sanders had no ownership or other interest in the real estate development. It played no part in the sending of a letter on stationery bearing its name which was inadvertently and erroneously used by a vice president of Coronado Landmark. The judgment of nonsuit as to Sanders was proper.

*The Signal Judgment*

■ The Walkers contend that Signal is liable under either an agency or alter ego theory.

*Alter Ego*

Plaintiffs' pleadings do not contain an alter ego claim. Although alter ego was mentioned from time to time by counsel for plaintiffs in discussing evidentiary rulings with the trial judge, evidence on that theory was successfully objected to by defense counsel. The vicarious liability of Signal was tried on the basis of agency.

Plaintiffs have stressed in their factual discussion the difficulty to prospective purchasers in the Coronado Cays development of distinguishing between the entities Signal Landmark and Coronado Landmark. We have agreed upon review of those facts that liability of Signal Landmark and Coronado Landmark was proper. Plaintiffs now attempt to bootstrap themselves under a theme of general unfairness to include the parent corporation. In other words, because the value of the parent-first tier corporation, Signal, may increase as a result of the profits of a fourth tier corporation, the parent should be liable.[5] We conclude that more is required than solely a parent-subsidiary corporate relationship to create liability of a parent for the actions of its subsidiary.

The elements of alter ego include an inequitable result if the corporate veil is not pierced and such unity of interest and ownership that the separate entities no longer exist. (See, e.g., *Automotriz etc. De California* v. *Resnick* (1957) 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042]; *Associated Vendors, Inc.* v. *Oakland Meat Co.* (1962) 210 Cal.App.2d 825 [26 Cal.Rptr. 806].) The jury in the punitive damage award against Signal Landmark and Coronado Landmark properly considered the individuality and value of each corporation. The sole basis for holding Signal liable would be to enable the plaintiffs to obtain an increased award of punitive damages because of the substantial net worth of the parent. There is no factual justification to do so.

*Agency*

The Walkers' assertion that Coronado Landmark and Signal Landmark were the actual and ostensible agents of Signal is based essentially on the same listing of alleged facts which support their alter ego argument. The record does not support their claim the facts of the case at bench bring it within the holdings of *Hartong* v. *Partake, Inc.* (1968) 266 Cal.App.2d 942 [72 Cal.Rptr. 722]; *Beck* v. *Arthur Murray, Inc.* (1966) 245 Cal.App.2d 976, 979 [54 Cal.Rptr. 328]; or *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224].

There is no evidence that Signal ever employed Coronado Landmark or Signal Landmark or any officer, director or employee as its actual agent. There is no evidence to show that Signal, by its statements or

---

[5]Signal during the time in question owned 100 percent of the stock in Signal Properties, Inc. (not a party to this action) which in turn owned 100 percent of the stock in Signal Landmark, the owner of 100 percent of the stock in Coronado Landmark, Inc.

conduct caused or allowed the Walkers to believe that Coronado Landmark or Signal Landmark were its authorized agents or that the Walkers parted with something of value in reliance on the apparent authority of either Coronado Landmark or Signal Landmark as an agent of Signal. (See Civ. Code, §§ 2300, 2317, 2334; *Associated Creditors' Agency* v. *Davis* (1975) 13 Cal.3d 374 [118 Cal.Rptr. 772, 530 P.2d 1084].) The only evidentiary support in the record involving Signal is the sales literature describing the Coronado Cays development as a development of *one* of the Signal Companies, i.e., Signal Landmark. There is, however, no evidence that the brochure was developed or distributed by an act of Signal nor is there any evidence of negligence on the part of Signal. Obviously the reasonable reliance by the Walkers on the good will of Signal was of significance to the jury in holding Signal Landmark liable. No other facts or circumstances are presented, however, to warrant the transferrence of that reliance to Signal Properties and ultimately to Signal as the parent corporation. The record is devoid of any facts which justify the argument that during the period in question Signal was to Signal Landmark, what Signal Landmark was to Coronado Landmark. Although this argument may have a pleasant symmetry, it is without merit.

*Evidentiary Rulings*

 The Walkers' final claim of error is based upon the trial court's order quashing several subpoenas duces tecum which were served near the end of the presentation of their case. They contend they were precluded from producing evidence from a person knowledgeable of the fiscal affairs of Signal.

The documents which counsel wished to have available included the annual reports of Signal for the years 1973-1974. There was nothing contained in those reports identifying either Signal Landmark or Coronado Landmark. Reference was only to Signal Properties, Inc., not a party to this case. The exclusion of those reports was proper.

Unfortunately, counsel for plaintiffs apparently interpreted the order quashing the subpoenas duces tecum as an order which prevented him from having the individuals appear without the books or documents described in the subpoenas. During dialogue on this issue counsel did not request a continuance to permit him to subpoena those persons he thought were essential. He elected to rest his case after which the motion for nonsuit was made and granted. After a review of the entire record, it is apparent both counsel were well prepared, experienced and aggressive.

The election by plaintiffs' counsel to rest his case was not the result of pressure by the trial judge.

### DISPOSITION

The judgments in favor of Walkers against Coronado Landmark and Signal Landmark in the sum of $11,928 and $5,000 are modified and merged into a single judgment of $8,414. Except as modified each of the judgments is affirmed. Each party shall bear his own costs on appeal.

Brown (Gerald), P. J., and Staniforth, J., concurred.

The petition of appellants Coronado Landmark, Inc., and Signal Landmark, Inc., for a hearing by the Supreme Court was denied November 30, 1978.