[Civ. No. 31540. Fourth Dist., Div. One. May 4, 1984.]

FRANK L. DEVLIN et al., Plaintiffs and Respondents, v.
KEARNY MESA AMC/JEEP/RENAULT, INC.,
Defendant and Appellant.

382

**COUNSEL**

Oliver, Sullivan, Cummins & Wertz, Steven G. Amundson and Floyd L. Morrow for Defendant and Appellant.

Davies, Barwick & Knowlton, Robert W. Knowlton and David L. Bain for Plaintiffs and Respondents.

**OPINION**

**WIENER, J.**—Defendant Kearny Mesa AMC/Jeep/Renault, Inc. (Kearny Mesa) appeals a second time from the judgment in favor of plaintiffs Frank L. and Helen B. Devlin (Devlins).

In its first appeal Kearny Mesa challenged the procedural aspects leading up to its default and a default judgment of $3,425.69 compensatory damages and $80,000 punitive damages. We rejected Kearny Mesa's procedural arguments and affirmed the orders denying its motions to quash service of process and to set aside its default and default judgment. (*Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (June 22, 1983) 4 Civ. No. 26726 [unpub. opn.].) We affirmed the judgment with respect to Kearny Mesa's liability for compensatory and punitive damages. We reduced the compensatory damages to $3,000 and, as modified, also affirmed that part of the judgment. We explained, however, although an award of punitive damages was warranted (see *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 928 [148 Cal.Rptr. 389, 582 P.2d 980]), the amount of that award was factually unsupported because there was no evidence of Kearny Mesa's wealth. Accordingly, we reversed the judgment solely with respect to the amount of punitive damages and remanded the case for a redetermination of that award. Upon remand, the trial court ruled Kearny Mesa could not participate in further proceedings and, after a judgment hearing, again awarded the Devlins $80,000 punitive damages.

Through new counsel on this appeal, Kearny Mesa argues the court improperly excluded it from participating in proceedings on remand and the amount of punitive damages awarded is excessive as a matter of law. As we shall explain, we conclude Kearny Mesa's arguments are without merit and affirm the judgment.

*Factual and Procedural Background*

After the remittitur was filed in the first appeal, Kearny Mesa was prevented from taking the deposition of the Devlins' accountant. The court had issued a protective order on the ground Kearny Mesa had no standing to participate because of the earlier entry of its default. At the hearing to determine punitive damages, after both parties argued the effect of the default on Kearny Mesa's right to participate, the court again ruled the default prevented Kearny Mesa's direct involvement in further proceedings.

The Devlins' certified public accountant, William Wade, and Kearny Mesa's office manager, Mary Sampley, testified at the December 1983 hear-

ing. Wade, a former manager for the accounting firm of Arthur Andersen and Company, said Sampley had provided him with the financial records of Kearny Mesa for the years 1981 through October 1983.

The financial statements prepared in the format used by American Motors were consistent with Kearny Mesa's computerized general ledger. The financial statements for the months of August, September and October 1983 were identified by Sampley as correct copies of the originals.

Wade noted an unusual deduction in Kearny Mesa's retained earnings. He stated Sampley had not explained the adjustment nor were there any entries in the journal showing the reason for the change. The effect of the deduction was to reduce the net worth of Kearny Mesa by $175,725. Perhaps coincidentally, this accounting entry was made shortly before oral argument on the previous appeal.

Wade explained in October 1983 Kearny Mesa's net worth, increased by the unexplained accounting adjustment, was $415,000[1] and its yearend projected net worth was $457,000. Ten months net profit was $207,000 on gross sales of $4,352,000. Annual gross sales were projected to be $5,223,000. Kearny Mesa had current liabilities of $989,000 and current assets of $1,269,000, of which $430,000 was "paid-in capital." "Paid-in capital" was defined as money put into the enterprise by the owners to assist in financing operations. Kearny Mesa's financial records also included a corporate resolution authorizing the borrowing of up to $1.5 million from the Bank of America.

*Discussion*

■ *The Court Correctly Prevented Kearny Mesa's Participation in the Judgment Hearing*

Our first decision rightly assumed Kearny Mesa, having defaulted, knew it could not participate in a judgment hearing on punitive damages. The entry of a default terminates a defendant's rights to take any further affirmative steps in the litigation until either its default is set aside or a default judgment is entered. (*Forbes* v. *Cameron Petroleums, Inc.* (1978) 83 Cal.App.3d 257, 262-263 [147 Cal.Rptr. 766]; 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 148, p. 2809; see *Luz* v. *Lopes* (1960) 55 Cal.2d 54, 59, fn. 2 [10 Cal.Rptr. 161, 358 P.2d 289].) "A defendant against whom a default has been entered is out of court and is not entitled to take any further steps in the cause affecting plaintiff's right

---

[1] For stylistic convenience we have rounded off the numbers to the nearest thousand.

of action; he cannot thereafter, until such default is set aside in a proper proceeding, file pleadings or move for a new trial or demand notice of subsequent proceedings." (*Brooks* v. *Nelson* (1928) 95 Cal.App. 144, 147-148 [272 P. 610].) And, even where a default judgment is "vacated, it would be the duty of the court immediately to render another of like effect, and *the defaulting defendants would not be heard for the purpose of interposing any denial or affirmative defense.*" (*Title Insurance etc. Co.* v. *King etc. Co.* (1912) 162 Cal. 44, 46 [120 P. 1066], italics added.)

Kearny Mesa appears to have a jaundiced view of the capability of trial courts. It argues a court can decide wisely only in an adversary context. The ex parte nature of a judgment hearing following default (see *Don* v. *Cruz* (1982) 131 Cal.App.3d 695, 702 [182 Cal.Rptr. 581]) does not dilute a court's ability to weigh and consider the evidence and to reach a fair result. If a court thinks additional evidence is necessary, the case can be continued for further proceedings so the judgment will be supported by complete and accurate information. (See Code Civ. Proc., § 585, subd. (b).) ▮ Under no circumstances will a defaulted defendant suffer judgment for a claim of unliquidated damages or for an amount in excess of that stated in the complaint. (See Code Civ. Proc., §§ 425.10, subd. (b), 425.11, 580; *Petty* v. *Manpower, Inc.* (1979) 94 Cal.App.3d 794, 797-798 [156 Cal.Rptr. 622].)

In asserting the error of its exclusion, Kearny Mesa relies heavily on *Vossler* v. *Richards Mfg. Co.* (1983) 143 Cal.App.3d 952 [192 Cal.Rptr. 219]. *Vossler* held punitive damages may be awarded at trial even if plaintiff does not introduce evidence of defendant's wealth. (*Id.,* at pp. 961-965.) *Vossler*'s rationale, in part, is that defendants have the best access to wealth data and thus should bear the burden of introducing such evidence at trial. (*Id.,* at p. 964.) That is not to say, however, that defendants necessarily are entitled to appear and present such data at judgment hearings following default. While *Vossler*'s rationale may be appropriate in the adversary context of trial, it is inapposite in the ex parte context of proceedings following entry of default.

The Legislature has not limited the exercise of judicial discretion to contested proceedings. Code of Civil Procedure section 585, subdivision (b) provides: "The plaintiff [after entry of defendant's default] may apply to the court for the relief demanded in the complaint; *the court shall hear the evidence offered by the plaintiff,* and shall render judgment for such sum (not exceeding the amount stated in the complaint), as appears by such evidence to be just." (Italics added.) Thus, when further proceedings are necessary following reversal of a default judgment because the damages are determined to be excessive as a matter of law (see, e.g., *Uva* v. *Evans*

(1978) 83 Cal.App.3d 356, 362-365 [147 Cal.Rptr. 795]), those further proceedings only mean the plaintiff must participate in a second judgment hearing. (See *Don* v. *Cruz, supra,* 131 Cal.App.3d at pp. 702, 704, 708; *Uva* v. *Evans, supra,* 83 Cal.App.3d at pp. 359, 365.) Unless the appellate court directs otherwise (see Code Civ. Proc., § 43), the defendant cannot participate in a second judgment hearing any more than it can in the first hearing between default and appeal.[2]

*The Punitive Damages Are Not Excessive as a Matter of Law*

Punitive damages are not a new phenomenon. They have been part of our common law tradition for more than two centuries.[3] (Comment, *The Imposition of Punishment by Civil Courts: A Reappraisal of Punitive Damages* (1966) 41 New York U.L.Rev. 1158, 1160.) Allowed in almost every state in certain cases, they have been part of our Civil Code since 1872. ██ Civil Code section 3294[4] allows plaintiffs to recover punitive damages in cases of "oppression, fraud, or malice." The legislative purpose is primarily to punish wrongdoers and deter the commission of wrongful acts. (*Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d at p. 928, fn. 13.) Civil Code section 3294 expresses these twin goals.

██ Whether punitive damages should be awarded and the amount of such an award are issues for the jury and for the trial court on a new trial

---

[2] We recognize the practice in other states is different than in California. (See Annot., Default—Damages—Notice and Hearing (1967) 15 A.L.R.3d 586.) In as many as 19 other states a defaulted defendant has the right to appear and to participate in the hearing to determine damages. But "[t]he defaulting defendant's right to a notice and hearing as to the assessment of damages is a matter controlled almost exclusively by statutes, rules of civil procedure, or local practice rules." (*Id.,* at p. 589, fn. omitted.) Reflecting the various controlling statutes and rules, the decisions concerned with the right of a defendant to notice of and to participate in the hearing to determine damages have not reached uniform results. (*Ibid.*) Here, we are guided by the California Legislature which has manifested its intent generally to exclude defaulted defendants from judgment hearings. (Code Civ. Proc., § 585, subd. (b).)

[3] In *Huckle* v. *Money* (1763) 2 Wils. K.B. 205, the court articulated for the first time the doctrine of punitive damages: "The personal injury done to [the plaintiff] was very small, so that if the jury had been confined by their oath, . . . perhaps [20 pounds] damages would have been thought damages sufficient; but the small injury done to the plaintiff . . . did not appear to the jury in that striking light in which the great point of law touching the liberty of the subject, appeared to them at the trial. . . . I think they have done right in giving exemplary damages. To enter a man's house by virtue of a nameless warrant, in order to procure evidence, is worse than the Spanish Inquisition; a law under which no Englishmen would wish to live an hour; it was a most daring public attack upon the liberty of the subject." (*Id.,* at pp. 206-207.)

[4] Civil Code section 3294 provides in part: "(a) In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to actual damages, may recover damages for the sake of example and by way of punishing the defendant."

motion. All presumptions favor the correctness of the verdict and judgment. (*Finney* v. *Lockhart* (1950) 35 Cal.2d 161, 164 [217 P.2d 19].) While the trial court's determination is not binding upon a reviewing court, it must be accorded great weight. (*Moore* v. *American United Life Ins. Co.* (1984) 150 Cal.App.3d 610, 642 [197 Cal.Rptr. 878].) ▮ An award of punitive damages will be reversed as excessive "only when the entire record viewed most favorably to the judgment indicates the award was rendered as the result of passion and prejudice. [Citation.]" (*Walker* v. *Signal Companies, Inc.* (1978) 84 Cal.App.3d 982, 997 [149 Cal.Rptr. 119]; see also *Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d at pp. 927-928.)

The process through which a fact finder finds punitive damages is somewhat contradictory. On the one hand, the court or jury must be sufficiently disturbed to conclude the defendant must be punished. On the other hand, although outraged, the fact finder cannot be vindictive. The channeling of just the correct quantum of bile to reach the correct level of punitive damages is, to put it mildly, an unscientific process complicated by personality differences. Conduct which one person may view as outrageous another may accept without feeling, depending on such diverse characteristics as an individual's background, temperament and societal concerns. The process is further complicated by the lack of objective criteria from either the Legislature or the courts as to "how much" is necessary to punish and deter.

We have examined a number of appellate decisions in an effort to determine whether we could discern from the cases a single formula for calculating punitive damages. For those with a mathematical bent, the attached appendix reflects part of our research.[5] Frankly, we are unable to find that formula. Instead of making a mathematical breakthrough we discovered what everyone probably already knows: the formula does not exist. And, we have concluded, that is properly so.

Although we may now live in a highly computerized society, it is important to recognize the justice system need not and should not mirror a mechanistic view of life. The life of the law should continue to be experience. The concept of justice connotes a human process, performed by judges and juries in good faith, exercised with compassion, still tinged with sufficient subjectivity to conform the rules of law to the realities of life. Accordingly, we examine the usual factors recited by appellate courts when reviewing punitive damages awards, applying those factors in the customary manner to reach what we believe is a decision consistent with precedent.

[5]The appendix is neither a comprehensive nor a scientific survey of every punitive damages case ever decided by a California appellate court. Instead, it represents a sampling of cases awarding punitive damages against defendants engaged in a variety of business endeavors.

The factors to be considered in assessing a punitive damages award are the nature of the defendant's acts, the amount of compensatory damages awarded and the wealth of the defendant. (*Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d at p. 928.)

As stated above, our earlier reversal for a redetermination of punitive damages was based solely on the third factor, wealth. For purposes of clarity, we summarize the facts and repeat our earlier conclusions on the first two factors.

In October 1980 the Devlins visited Kearny Mesa to look at new cars. They wanted merely to look, not to buy. At that time, Mr. Devlin was 84 years old and only 5 years retired from his job as a cement finisher. He was in poor health and unable to drive, having just undergone a cataract operation. Mrs. Devlin was 66 years old. She could drive but was suffering from cancer and had recently had a kidney removed.

A Kearny Mesa salesman showed the Devlins a used 1980 AMC Spirit. Lee Johnson, Kearny Mesa's sales manager, told them the vehicle had never been owned and was used only as a demonstrator for the dealership. Johnson stated and the odometer showed the vehicle had been driven only 8,462 miles. After indicating an interest in buying the car, the Devlins were taken to a small room to negotiate terms. On occasion as many as five salesmen were in the room with them. The Devlins finally signed a purchase agreement.

Several weeks later Mr. Devlin found a Department of Motor Vehicles (DMV) form in the glove compartment of the Spirit which showed the vehicle had been driven 20,687 miles. He also discovered from the DMV the vehicle had been previously owned and then repossessed by Kearny Mesa. After driving the car about 5,500 miles it needed substantial repairs consistent with actual mileage in excess of 20,000 miles.

Looking to the first *Neal* factor, we held Johnson's fraudulent statements were reprehensible in the extreme. The pressures applied and the misrepresentations made to defraud this elderly couple were unconscionable. As expressed by the lower court, the case represented "a glaring example of what consumer fraud cases are all about." "Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society." (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 808 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; see also *Zhadan* v. *Downtown L.A. Motors* (1976) 66 Cal.App.3d 481, 497 [136 Cal.Rptr. 132].) Kearny Mesa's blatant violation of law and public policy in turning back the vehicle's odometer (Veh. Code, §§ 24007,

subd. (a), 28051; *Rob-Mac, Inc.* v. *Department of Motor Vehicles* (1983) 148 Cal.App.3d 793, 798 [196 Cal.Rptr. 398]) was further evidence of the reprehensibility of its conduct. (See *Nelson* v. *Gaunt* (1981) 125 Cal.App.3d 623, 643 [178 Cal.Rptr. 167]; *Alhino* v. *Starr* (1980) 112 Cal.App.3d 158, 178 [169 Cal.Rptr. 136].) We categorically stated this was a case which could support a relatively large punitive damages award. (See *Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d at p. 928.)

Turning to the second *Neal* factor, we acknowledged punitive damages should bear a reasonable relationship to actual damages suffered (*Wetherbee* v. *United Insurance Co. of America* (1968) 265 Cal.App.2d 921, 934 [71 Cal.Rptr. 764]), but also noted there is no fixed ratio by which to determine the reasonableness of that relationship. (*Finney* v. *Lockhart, supra,* 35 Cal.2d at p. 164; *Rosener* v. *Sears, Roebuck & Co.* (1980) 110 Cal.App.3d 740, 751 [168 Cal.Rptr. 237].) In light of the circumstances of this case, we could not say as a matter of law that punitive damages equal to almost 27 times the award of compensatory damages were unreasonable. ■ As concluded above, the calculation of punitive damages does not involve strict adherence to a rigid formula. It involves, instead, "a fluid process of adding or subtracting depending on the nature of the acts and the effect on the parties and the worth of the defendants. Juries within this framework have a wide discretion in determining what is proper. [Citation.]" (*Walker* v. *Signal Companies, Inc., supra,* 84 Cal.App.3d at p. 998.) Courts have affirmed punitive damage awards with a ratio of as high as 2000 to 1. (*Finney* v. *Lockhart, supra,* 35 Cal.2d at pp. 162, 165; see appendix for further comparison of ratios which have been affirmed.)

Kearny Mesa directed its most strenuous argument to the applicability of *Neal*'s third factor, the wealth of the defendant. ■ There can be no question but that wealth is an important consideration. (*Ford Motor Co.* v. *Home Ins. Co.* (1981) 116 Cal.App.3d 374, 380 [172 Cal.Rptr. 59]; *Rosener* v. *Sears, Roebuck & Co., supra,* 110 Cal.App.3d at p. 750; *Walker* v. *Signal Companies, Inc., supra,* 84 Cal.App.3d at p. 997.) Because the purposes of punitive damages are to punish the defendant and to make an example of him, "the wealthier the wrongdoing defendant, the larger the award of exemplary damages need be in order to accomplish the statutory objective" (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 65 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]), from which "[i]t also follows that the poorer the wrongdoing defendant the smaller the award of punitive damages need be in order to accomplish the statutory objective." (*Merlo* v. *Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 18 [130 Cal.Rptr. 416].) We reversed and remanded for a redetermination of punitive damages because evidence of Kearny Mesa's wealth was totally absent from the record. (See *Alhino* v. *Starr, supra,* 112 Cal.App.3d at p. 179.)

The Devlins have since closed that gap. Ample evidence of Kearny Mesa's wealth was presented at the second judgment hearing.

Net worth generally is considered the best measure of a defendant's "wealth" for purposes of assessing punitive damages. (*Little* v. *Stuyvesant Life Ins. Co.* (1977) 67 Cal.App.3d 451, 469, fn. 5 [136 Cal.Rptr. 653].) Here, the lower court considered net worth plus a variety of other figures relating to Kearny Mesa's wealth. Other courts have considered various asset and income figures relevant to the issue of punitive damages. (See, e.g., *Pistorius* v. *Prudential Insurance Co. of America* (1981) 123 Cal.App.3d 541, 555 [176 Cal.Rptr. 660]; see also cases cited in appendix.) A corporate resolution to borrow also serves as an indicator of the continuing health and viability of a business.

■ While the function of punitive damages will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort, the function also will not be served by an award which is larger than necessary to properly punish and deter. (*Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d at p. 928; *Moore* v. *American United Life Ins. Co., supra,* 150 Cal.App.3d at p. 641.)

■ In light of the fluid process involved in determining the proper amount of punitive damages, the amount awarded here is not excessive as a matter of law. Looking at the entire record in the light most favorable to the judgment, the court below properly concluded Kearny Mesa's conduct was highly reprehensible and involved a calculated attempt on its part to take advantage of the Devlins. Accordingly, the relatively large $80,000 award was necessary to properly punish and deter. There is nothing in the financial data presented which suggests the award will unduly interfere with or hamper Kearny Mesa's future operations. Although the award, representing 17.5 percent of Kearny Mesa's annualized net worth or almost 4 months net profit, is somewhat greater than comparable ratios contained in the reported cases (see appendix), we cannot say these numerical differences mandate a finding of excessiveness. The lesson we learned from parsing the cases is that the reason why there is no simple formula for calculating punitive damages is that there is no particular sum which represents the *only* correct amount for such damages in any given case. Instead, there is a range of reasonableness for punitive damages reflective of the fact finder's human response to the evidence presented. In light of the evidence in this case, $80,000 certainly falls within the range of reasonableness.

Viewed in absolute terms, the Devlins' $80,000 award does not appear to be the product of passion or prejudice. To say, relative to the reported cases, the 17.5 percent net worth award must be reduced by a certain per-

centage (compare *Zhadan* v. *Downtown Los Angeles Motor Distributors, Inc.* (1979) 100 Cal.App.3d 821, 835-836 [161 Cal.Rptr. 225]) or the excess over three months net profit must be excised (compare *Schomer* v. *Smidt* (1980) 113 Cal.App.3d 828, 836 [170 Cal.Rptr. 662]) is merely to substitute the factfinding of appellate judges for that of trial courts in the guise of mathematical semantics. In the context of this case, shaving the percentages would give the reported cases a sacrosanct quality without reason. This is not a case where an unreasonable award was rendered by a runaway jury. Rather, the award was the result of measured deliberation by a conscientious judge. Deference to the trial court function requires appellate restraint. (See *Cunningham* v. *Simpson* (1969) 1 Cal.3d 301, 311-312 [81 Cal.Rptr. 855, 461 P.2d 39], conc. and dis. opn., Mosk, J.; see also *Burnett* v. *National Enquirer, Inc.* (1983) 144 Cal.App.3d 991, 1019-1021 [193 Cal.Rptr. 206], conc. and dis. opn., Beach, J., app. dism., — U.S. — [79 L.Ed.2d 668, 104 S.Ct. 1260].) We therefore hold that in light of the relevant factors, the punitive damages award of $80,000 is not excessive as a matter of law.

*Disposition*

Judgment affirmed.

Brown (Gerald), P. J., and Work, J., concurred.

A petition for a rehearing was denied May 24, 1984, and appellant's petition for a hearing by the Supreme Court was denied July 11, 1984.

APPENDIX

| Case | Compen-satory Damages | Original Punitive Damages | Relationship of Puni-tive Damages to Wealth of Defendant | Trial Court Ruling on New Trial Motion | Relationship of Punitive Damages to Wealth of Defendant | Appellate Court De-cision (re Wealth of Defendant Damages) | Final Rela-tionship of Punitive Damages to Com-pensatory Damages | Final Ratio of Punitive Dam-ages to Com-pensatory Damages |
|---|---|---|---|---|---|---|---|---|
| *Finney v. Lockhart* (1950) 35 Cal.2d 161 | $1 | $2,000 | No wealth data | Denied | No wealth data | Affirmed | No wealth data | 2,000 to 1 |
| *Bertero v. National General Corp.* (1974) 13 Cal.3d 43 | $553,953 | $625,000 | No wealth data | Denied | No wealth data | Affirmed | No wealth data | 1.1 to 1 |
| *Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910 | No more than $10,000 | About $1,538,211 | 0.73% net assets 0.2% gross assets 12.5 days net income | Granted (unless Pu-nitives re-mitted to $740,000) | 0.35% net assets 0.1% gross assets 6 days net income | Affirmed | 0.35% net assets 0.1 gross assets 6 days net income | 74 to 1 |
| *Wetherbee v. United Ins. Co. of America* (1968) 265 Cal.App.2d 921 | $1,050 | $500,000 | No wealth data | Denied | No wealth data | Punitive Damages Reversed as Exces-sive | No wealth data | 476.2 to 1 |
| *Wetherbee v. United Ins. Co. of America* (1971) 18 Cal.App.3d 266 | $1,050 | $200,000 | 0.33% net assets 0.07% gross assets 6.1 days net income | Denied | 0.33% net assets 0.07% gross as-sets 6.1 days net income | Affirmed | 0.33% net assets 0.07% gross, as-sets 6.1 days net income | 190.5 to 1 |

APPENDIX (continued)

| Case | Compen-satory Damages | Original Punitive Damages | Relationship of Puni-tive Damages to Wealth of Defendant | Trial Court Ruling on New Trial Motion | Relationship of Punitive Damages to Wealth of Defendant | Appellate Court De-cision (re Damages) | Final Rela-tionship of Punitive Damages to Wealth of Defendant | Final Ratio of Punitive Dam-ages to Com-pensatory Damages |
|---|---|---|---|---|---|---|---|---|
| *Roemer v. Retail Credit Co.* (1975) 44 Cal.App.3d 926 | $40,000 | $250,000 | 0.63% net worth 2.78% net income 10 days net income | Denied | 0.63% net worth 2.78% net income 10 days net income | Affirmed | 0.63% net worth 2.78% net income 10 days net income | 6.3 to 1 |
| *Merlo v. Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5 | $267,295 | $500,000 | 31.1% net worth | Denied | 31.1% net worth | Both Compen-satory and Puni-tive Dam-ages Re-versed as Excessive | — | — |
| *Zhadan v. Downtown L.A. Motors* (1976) 66 Cal.App.3d 481 | $5,342 | $175,000 | 32.92% net worth | Granted (unless Pu-nitives re-mitted to $50,000) | 9.4% net worth | Punitive Damages Reversed as Exces-sive | — | — |
| *Little v. Stuyvesant Life Ins. Co.* (1977) 67 Cal.App.3d 451 | $172,325 | $2.5 mil-lion | 14.83% net assets In excess of 15% net worth | Denied | 14.83% net assets In excess of 15% net worth | Punitive Damages Reversed as Exces-sive (un-less re-mitted to $250,000) | 1.48% net assets In excess of 1.5% net worth | 1.5 to 1 |

APPENDIX (continued)

| Case | Compensatory Damages | Original Punitive Damages | Relationship of Punitive Damages to Wealth of Defendant | Trial Court Ruling on New Trial Motion | Relationship of Punitive Damages to Wealth of Defendant | Appellate Court Decision (re Damages to Wealth of Defendant) | Final Relationship of Punitive Damages to Wealth of Defendant | Final Ratio of Punitive Damages to Compensatory Damages |
|---|---|---|---|---|---|---|---|---|
| *Walker v. Signal Companies, Inc.* (1978) 84 Cal.App.3d 982 | $17,328 | $215,000 | Less than 1% gross assets | None | Less than 1% gross assets | Compensatory Damages Reduced to $8,814 Punitive Damages Affirmed | Less than 1% gross assets | 25.6 to 1 |
| *Zhadan v. Downtown Los Angeles Motor Distributors, Inc.* (1979) 100 Cal.App.3d 821 | $5,260 | $90,000 | 6.85% net worth | Denied | 6.85% net worth | Affirmed | 6.85% net worth | 17.1 to 1 |
| *Miller v. Elite Ins. Co.* (1980) 100 Cal.App.3d 739 | Apparently $15,000 | $150,000 | 2-3% net worth (or maybe 18%) | None | 2-3% net worth (or maybe 18%) | Affirmed | 2-3% net worth (or maybe 18%) | 10 to 1 |
| *Schomer v. Smidt* (1980) 113 Cal.App.3d 828 | $20,000 | $16,000 | 10% net worth About 3 months salary | Denied | 10% net worth About 3 months salary | Affirmed | 10% net worth About 3 months salary | 0.8 to 1 |
| *Godfrey v. Steinpress* (1982) 128 Cal.App.3d 154 | $21,800 | $60,000 | 6% net assets 4.62% net worth | None | 6% net assets 4.62% net worth | Affirmed | 6% net assets 4.62 net worth | 2.8 to 1 |

APPENDIX (continued)

| Case | Compensatory Damages | Original Punitive Damages | Relationship of Punitive Damages to Wealth of Defendant | Trial Court Ruling on New Trial Motion | Relationship of Punitive Damages to Wealth of Defendant | Appellate Court Decision (re Punitive Damages) | Final Relationship of Punitive Damages to Wealth of Defendant | Final Ratio of Punitive Damages to Compensatory Damages |
|---|---|---|---|---|---|---|---|---|
| *Burnett v. National Enquirer, Inc.* (1983) 144 Cal.App.3d 991 | $300,000 | $1.3 million | 50% net worth 83.33% net income 10 months net income | Damages Remitted to $50,000 Compensatory $750,000 Punitives | 28.85% net worth 48.08% net income 5.8 months net income | Punitive Damages Reversed as Excessive (unless remitted to $150,000) | 5.77% net worth 9.62% net income 5 weeks net income | 3 to 1 |
| *Moore v. American United Life Ins. Co.* (1984) 150 Cal.App.3d 610 | $30,000 | $2.5 million | 3.2% net assets 0.25% gross assets 3.4 weeks net income | Denied | 3.2% net assets 0.25% gross assets 3.4 weeks net income | Affirmed (Reversed award of attorney fees) | 3.2% net assets 0.25% gross assets 3.4 weeks net income | 83.33 to 1 |