[No. AO19179. First Dist., Div. Three. Nov. 8, 1983.]

ROB-MAC, INC., Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, and Gordon Zane, Deputy Attorney General, for Defendant and Appellant.

Harold C. Wright and Wright & Britton for Plaintiff and Respondent.

OPINION

**SCOTT, J.**—The Department of Motor Vehicles and its director (hereafter the DMV) appeals from a judgment granting a petition for writ of mandate

and ordering it to set aside its decision imposing discipline on respondent Rob-Mac, Inc. (hereafter Rob-Mac), a California corporation. The question in this appeal is whether a licensed automobile dealer can be disciplined by the department for the conduct of a salesperson acting under the dealer's license even if that salesperson is an independent contractor rather than an employee.

I

Respondent Rob-Mac, Inc., does business as Imports of Palo Alto under a license issued by appellant Department of Motor Vehicles. An accusation was filed by the DMV alleging that Rob-Mac, directly or through its agent Barry Litsey, reset odometers on seven vehicles in violation of Vehicle Code sections 11713, subdivision (n), and 28051, and caused purchasers of those vehicles to suffer loss by misrepresenting mileage in violation of Vehicle Code section 11705, subdivision (a)(14).

At a hearing before an administrative law judge, the evidence was that Litsey entered into an agreement with Matthew Pascal, president of Rob-Mac, whereby Litsey would buy vehicles for Imports of Palo Alto and wholesale them to other dealers. Pascal provided all the funds, and the net profits were to be split 50/50. Pascal exercised no day-to-day supervision over Litsey. However, if the inventory was too large, he would tell Litsey not to buy any more vehicles.

Sometime after Litsey purchased seven vehicles and before he sold them, he became aware that their odometers had been reset. At the time of their sale, he did not tell Pascal or the purchasers that the odometers did not reflect the vehicles' true mileage. When he finally did inform Pascal, the dealer ordered that the purchasers be put on notice that the odometers were not correct. One of the vehicles had been sold at retail; Pascal ordered his attorney to return that purchaser's money.

The administrative law judge found that cause for disciplinary action against Rob-Mac had not been established. However, pursuant to Government Code section 11517, the DMV rendered its own decision, and concluded that (1) cause for disciplinary action under Vehicle Code section 11705, subdivision (a)(14), was established, as the purchasers of the vehicles suffered loss or damage by reason of Litsey's constructive fraud; and (2) Rob-Mac was legally responsible for the conduct of its salespersons acting under its license. Rob-Mac's license was suspended for 15 days; the suspension was stayed on condition of satisfactory completion of a two-year probationary period.

Based on its conclusion that Litsey was an independent contractor rather than an employee, the trial court granted Rob-Mac's petition for writ of mandate and ordered the DMV to set aside its decision and reconsider its action against the dealer.

## II

The DMV contends that even if salesperson Litsey was an independent contractor, licensee Rob-Mac was subject to discipline for Litsey's conduct. We agree.

The owner of a license is obligated to see that the license is not used in violation of the law. (*Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347, 360 [185 Cal.Rptr. 453, 650 P.2d 328].) "If a licensee elects to operate his business through employees he must be responsible to the licensing authority for their conduct in the exercise of his license and he is responsible for the acts of his *agents or employees* done in the course of his business in the operation of the license." (*Arenstein* v. *California State Bd. of Pharmacy* (1968) 265 Cal.App.2d 179, 192 [71 Cal.Rptr. 357], italics added.)

A licensee "may not insulate himself from regulation by electing to function through employees *or independent contractors.*" (*Camacho* v. *Youde* (1979) 95 Cal.App.3d 161, 165 [157 Cal.Rptr. 26], italics added.) In *Camacho* the court held that the holder of an agricultural pest control license was subject to discipline because his pilot negligently dumped pesticide on a man during aerial spraying of a field. While the court described the pilot as the licensee's employee, it also accurately stated that effective regulation would be impossible if a licensee could immunize himself from disciplinary action by contracting away the daily operations of his business to independent contractors. (*Id.,* at p. 164.) The court viewed the licensee's duty to apply pesticides safely as "nondelegable to either an independent contractor or to an employee," and held the licensee "to the conduct prescribed by statute for operating his licensed business." (*Id.,* at p. 165.)

Respondent attempts to distinguish *Camacho* by arguing that Litsey's unlawful acts were outside the scope of his agency and were therefore "neither delegable [n]or nondelegable." Respondent misunderstands the nondelegable duty theory of tort liability underlying the *Camacho* court's analysis. According to that theory, where an employer is under an affirmative duty by reason of his relationship with others, he cannot escape responsibility for that duty by delegating work to an independent contractor. (*Maloney* v. *Rath* (1968) 69 Cal.2d 442, 446 [71 Cal.Rptr. 897, 445 P.2d 513, 40 A.L.R.3d 1]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts,

§§ 657, 663, pp. 2937, 2942; 1 Witkin, Summary of Cal. Law (8th ed. 1974) Agency and Employment, § 153, p. 753.) The duty regarded as nondelegable may be imposed by common law or statute. (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 251 [66 Cal.Rptr. 20, 437 P.2d 508].) Among the policy considerations which have led courts to impose liability on employers under the nondelegable duty theory is the great importance to the public of performance of the particular duty at issue. (*Ibid.*)

What is involved here, of course, is whether an employer/licensee is subject to discipline by the licensing agency, not whether it is subject to tort liability. Nevertheless, similar policy considerations apply. ■ The statutory scheme governing the licensing of automobile dealers was designed to protect the public. (*Ford Dealers Assn.* v. *Department of Motor Vehicles, supra,* 32 Cal.3d at p. 356.) "[T]he dominant concern of this statutory scheme is that of protecting the purchaser from the various harms which can be visited upon him by an irresponsible or unscrupulous dealer." (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 920 [80 Cal.Rptr. 89, 458 P.2d 33].) ■ Under this legislative scheme, dealer Rob-Mac had statutory duties not to cause any person to suffer loss or damage by reason of fraud in the sale of a vehicle (Veh. Code, § 11705, subd. (a)(14)),[1] and not to reset or tamper with any odometer. (*Id.,* §§ 11713, subd. (n), 28051.) (See *Munchow* v. *Kraszewski* (1976) 56 Cal.App.3d 831, 835-836 [128 Cal.Rptr. 762]; *Laczko* v. *Jules Meyers, Inc.* (1969) 276 Cal.App.2d 293, 295 [80 Cal.Rptr. 798].) Rob-Mac should not be able to escape responsibility for those statutory duties by delegating the details of its sales operations to an independent contractor.

We have not overlooked the Supreme Court's dictum in *Ford Dealers Assn.* v. *Department of Motor Vehicles, supra,* 32 Cal.3d at page 361, footnote 8. The court was considering the validity of administrative regulations making auto dealers liable for the false or misleading statements of their employees. After reiterating the settled rule that licensees can be held liable for the acts of their employees, the court added in a footnote: "The imputation of liability to the employer is based on the assumption that a licensed dealer is in a position to control the actions of salespeople. Consequently, it is held to be fair to impute to the employer liability for the violations of employees. (See, e.g., *In re Marley* (1946) 29 Cal.2d 525 [175 P.2d 832].) However, where a dealer is able to demonstrate unusual circumstances that negate the presumption of control, it might be unfair to hold that dealer liable for the misrepresentations of salespeople. Mere lack

---

[1] In 1982, section 11705, subdivision (a)(14), was amended to substitute "in the course of the licensed activity" for "in the sale or purchase of a vehicle or parts or accessories thereof." (Stats. 1982, ch. 791, § 3, p. 3065.)

of knowledge would not suffice, where a dealer appeared to have tolerated misleading statements in the past or created a climate in which such mis-statements were likely to occur. However, a dealer might be able to defend against an action under section 11713, subdivision (a) by demonstrating that it made every effort to discourage misrepresentations; had no knowledge of salespeople's misleading statements; and, when so informed, refused to accept the benefits of any sales based on misrepresentations and took action to prevent a reoccurrence. [¶] In this case, only the validity of the administrative regulation holding employers liable, in general, for the statements of their employees is at issue. In the absence of a specific factual setting raising the question, the court need not decide the exact dimensions of a possible exception to that general rule."

As we have already discussed, the liability of a licensee for the conduct of an independent contractor acting under his license must be based on the theory that the licensee has a nondelegable duty, rather than on a control theory. ■ Nevertheless, logic dictates that if a licensee may be able to avoid responsibility for the acts of his employees under "unusual circum-stances," he should also be able to escape discipline for the wrongdoing of his independent contractors under similarly unusual circumstances. The facts of this case, however, are not such that subjecting dealer Rob-Mac to discipline is unfair. Pascal knew before entering into the agreement that he wouldn't have a lot of time to spend on Litsey's sales activities, and there is no evidence that Pascal took any affirmative steps to discourage conduct of the sort which eventually occurred. Moreover, while Pascal apparently instructed his lawyer to return all of one purchaser's money, the record does not indicate that he refused to accept the benefits of the other six sales.

Respondent argues that imposing liability on it in this case will work against the public interest because "innocent" dealers who discover wrong-doing by their agents will be deterred from disclosure of that conduct for fear of administrative discipline. We disagree. The dealer who has created a climate in which wrongdoing is likely to occur, or who has not made every effort to discourage wrongdoing by his agents is not entirely free from fault. The public interest is better served by holding dealers responsible for the acts of their salespersons in all but unusual cases, thereby providing strong incentive for dealers to prevent wrongdoing by their agents in the first place. We note also that the relative culpability of the dealer in a given situation will undoubtedly affect the nature of the discipline imposed, as is apparent from the comparatively mild sanctions suffered by Rob-Mac in this case.

In light of our conclusion that Rob-Mac was subject to discipline for Litsey's misconduct even if Litsey was an independent contractor, we need

not consider appellant's alternative argument that the undisputed facts do not support the conclusion that Litsey was an independent contractor.

Judgment is reversed and the decision of the Department of Motor Vehicles is reinstated.

White, P. J., and Barry-Deal, J., concurred.