[No. A083019. First Dist., Div. Four. Aug. 5, 1999.]

REZA VALIYEE, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES et al., Defendants and
Respondents.

## COUNSEL

Malcolm A. Smith for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Sharon Blau Hartley and Fiel D. Tigno, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**SEPULVEDA, J.**—Reza Valiyee timely appeals from an order of the trial court denying his petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5). By his petition, Valiyee sought to set aside a decision of respondent Department of Motor Vehicles (DMV or the agency) revoking his license as an automobile dealer. Exercising its independent judgment on the evidence presented before a DMV hearing officer, the trial court found the weight of the evidence supported the agency's finding that Valiyee

violated Vehicle Code section 11713, subdivision (m), and section 11705, subdivision (a)(3),[1] by allowing another person to use his name, books, and dealer's license for the purpose of selling automobiles. The trial court further found that the DMV did not abuse its discretion by revoking Valiyee's license. We conclude that there is substantial evidence to support the trial court's findings on the statutory violations, and that the agency acted within its discretion as to the penalty imposed. Accordingly, we will affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After a full administrative hearing, the DMV revoked Valiyee's license as a vehicle dealer based on the following evidence. Valiyee was issued a dealer's license under the name of his automobile dealership, Best Auto Center. Valiyee operated a number of other businesses, including management of rental properties, a café, and a bed and breakfast. Valiyee was also an architect by profession, and was involved in various design, construction, and maintenance projects. Valiyee spent as much as 19 hours a day on his other businesses. Valiyee never attended a vehicle dealer's class, did not completely read the dealer's handbook, and did not own a dealer's handbook. Valiyee believed—erroneously—that an individual who has a dealer's license automatically has a salesperson's license.

On March 28, 1991, Valiyee and Sasan (Sam) Tajbakhsh executed an agreement which permitted Tajbakhsh to engage in the business of buying and selling automobiles on the premises at the Best Auto Center (Best), using Valiyee's dealer's license and books. In return, Valiyee was to receive a share of the profits from the car sales, in an amount representing a "reasonable rent." The agreement described Valiyee and Tajbakhsh as, respectively, lessor and lessee. Tajbakhsh characterized the agreement with Valiyee as a "rental agreement" for the purposes of selling cars. Valiyee testified that he viewed Tajbakhsh as renting a portion of the dealership premises, and that Tajbakhsh would "run it himself."

From 1991 to 1994, Tajbakhsh sold automobiles at Best. He executed reports of sales using Valiyee's dealer's license, and submitted reports to the DMV under the name and license of Best. Tajbakhsh purchased the cars for Best's inventory. During the years he bought and sold cars at the Best premises, Tajbakhsh never saw Valiyee sell any vehicles, other than one car appellant sold to an employee. Tajbakhsh never saw Valiyee fill out any paperwork, such as sales reports or odometer disclosure statements, for the

---

[1] All statutory references are to the Vehicle Code unless otherwise indicated. For convenience, we will use the abbreviated references "section 11713(m)" for section 11713, subdivision (m), and "section 11705(a)(3)" for section 11705, subdivision (a)(3).

dealership.[2] Tajbakhsh never saw Valiyee interact or deal with any customers. Valiyee would pass by Best almost every day because his other businesses were located there. Valiyee would say, "Hello. So what happened today? What did you do today? Did you sell anything?" Tajbakhsh did not recall receiving any checks from Best. Valiyee never sold a car after Tajbakhsh left the business.

In March 1994, the DMV received a complaint from Keith May, a man who had purchased a car from Tajbakhsh in 1993. A special investigator for the DMV, Keith Smith, interviewed Valiyee about May's claims that he did not receive a smog certificate at the time of the sale, and that the registration for his car was not completed in a timely fashion. Appellant told Smith that the sale was not his responsibility, and that Tajbakhsh ran the business and handled all the complaints. Valiyee explained to Smith that Tajbakhsh took care of "everything that was going on with the business." He said Tajbakhsh would process the paperwork through Best, and he would receive a share of the net profits.

Valiyee told another DMV investigator, Patricia Thompson, that Tajbakhsh was a tenant at Best. Appellant admitted that he allowed Tajbakhsh—who did not have a dealer's license—to use his dealer's license and sales books in return for 45 percent of the net profits from the car sales.

In December 1994, the DMV filed an accusation against appellant for five separate acts warranting discipline against his license. The accusation included allegations that appellant allowed another person to use his dealer's license, supplies and books for the purpose of buying and selling cars in violation of section 11713(m), and that he filed false statements in sales reports in violation of section 11705(a)(3).

An evidentiary hearing was held before administrative law judge (ALJ) Nancy Rasmussen between June 1995 and April 1996. On June 26, 1996, the ALJ issued a proposed decision, finding that Valiyee violated sections 11713(m) and 11705(a)(3). Specifically, the ALJ found that although appellant often stopped by the dealership, he exercised no supervision, management or control over Tajbakhsh's purchase and sale of vehicles. ALJ Rasmussen concluded that three years of vehicle sales activity was conducted at Best by Tajbakhsh under an unlawful arrangement to use Valiyee's dealer's license and books in return for a percent of the profits, and that Valiyee's

---

[2]In his brief, Valiyee cites testimony from Tajbakhsh in support of a claim that the books used to report sales to DMV were physically kept in an office used by Valiyee. However, at best, the actual testimony indicates that the books were kept in Valiyee's office for some part of the three-year period in which Tajbakhsh operated Best's business, perhaps for as little as two months.

license should be revoked. On August 7, 1996, the DMV filed an order denying Valiyee's request for reconsideration of the ALJ's decision.

On August 26, 1996, Valiyee filed a petition for writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5, seeking to set aside the DMV action. After a hearing on February 26, 1998, the court found that although Valiyee had been licensed for six and a half years, he had not conducted business as a dealer and that, for three years, the vehicle sales activity at Best was conducted by Tajbakhsh under an arrangement with Valiyee to use his dealer's license. Judgment denying Valiyee's petition was entered on March 20, 1998. This timely appeal followed.

## II. DISCUSSION

### A. *Substantial Evidence Supports the DMV's Findings and Decision.*

The parties agree that the trial court was required to exercise its independent judgment on the evidence presented in the administrative hearing and to determine whether the weight of the evidence supported the DMV's decision, which comes to the courts with a "strong presumption of correctness." (*Fukuda* v. *City of Angels* (1999) 20 Cal.4th 805, 811-812, 817 [85 Cal.Rptr.2d 696, 977 P.2d 693]. On appeal, our task is to determine whether the *trial court's* findings are supported by substantial evidence. (*Id.* at p. 824.) We must " ' "resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision." ' " (*Lake* v. *Reed* (1997) 16 Cal.4th 448, 457 [65 Cal.Rptr.2d 860, 940 P.2d 311].) Where the evidence supports more than one inference, we may not substitute our view of the evidence for the trial court's, and may overturn the trial court's findings of fact only if the evidence is insufficient to support those findings as a matter of law. (*Ibid.*) Under this standard of review, we conclude there is no basis for reversal of the trial court's order.

In order to conduct business as a vehicle dealer in California, an individual must apply for and obtain a license from the DMV. (§ 11700.) A "dealer" is defined by statute as a person who is engaged in the business, "wholly or in part," in the selling or buying of vehicles for the purpose of selling vehicles "or otherwise dealing in vehicles, whether or not such vehicles are owned by such person." (§ 285.) The Vehicle Code specifically excludes from the definition of "dealer" certain individuals, including salespersons who are employed by vehicle dealers while acting within the scope of their employment. (§ 286.) Through this statutory scheme, the Legislature intended to control who would be permitted to act as a vehicle dealer in

California, and the business activities of such dealers. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 921 [80 Cal.Rptr. 89, 458 P.2d 33].) The dominant purpose of this scheme is "protecting the purchaser from the various harms which can be visited upon him by an irresponsible or unscrupulous dealer." (*Id.* at p. 920.)

In relevant part, section 11713 prohibits a licensed dealer from allowing another person to use the dealer's license, supplies, or books for the purpose of engaging in the business of a dealer, as follows: "No holder of any license issued shall . . . [¶] . . . [¶] (m) Permit the use of the dealer's license, supplies, or books by any other person for the purpose of permitting that person to engage in the purchase or sale of vehicles required to be registered under this code, or permit the use of the dealer's license, supplies, or books to operate a branch location to be used by any other person, whether or not the licensee has any financial or equitable interest or investment in the vehicles purchased or sold by, or the business of, or branch location used by, the other person."

■ Valiyee contends that he is not subject to discipline under section 11713(m), because the statute is unconstitutionally vague in describing the conduct it proscribes. He further contends that the trial court's finding of a violation of section 11713(m) was not supported by substantial evidence. We reject these arguments.

■ Of course, "Due process requires fair notice of what conduct is prohibited." (*People* v. *Townsend* (1998) 62 Cal.App.4th 1390, 1400 [73 Cal.Rptr.2d 438].) In that regard, a statute must be definite enough to provide a standard of conduct for citizens and guidance for officials to avoid arbitrary and discriminatory enforcement. (*Ibid.*) " ' "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." [Citations.] A statute must be definite enough to provide a standard of conduct for those whose activities are proscribed as well as a standard for the ascertainment of guilt by the courts called upon to apply it. [Citations.]' " (*People* v. *Duz-Mor Diagnostic Laboratory, Inc.* (1998) 68 Cal.App.4th 654, 670 [80 Cal.Rptr.2d 419], quoting *People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974], and *Connally* v. *General Const. Co.* (1926) 269 U.S. 385, 391 [46 S.Ct. 126, 127-128, 70 L.Ed. 322].) However, "[a] statute is not vague if, as here, any reasonable and practical construction can be given to its language. Reasonable certainty is all that is required. [Citations.]" (*People* v. *Townsend, supra,* at p. 1401; see also *People* v. *Hodges* (1999) 70 Cal.App.4th 1348, 1354 [83 Cal.Rptr.2d 619].)

Under these standards, section 11713(m) easily passes constitutional muster. Indeed, Valiyee himself provides a "reasonable and practical construction" of the statute when he argues that the statute is violated if a dealer "wholly abandons his books, and simply allows someone to operate under the dealer's license without any contact, involvement or follow-up whatsoever." The clear weight of the evidence in this case shows that is, in essence, what appellant did. Valiyee's agreement with Tajbakhsh was framed as an agreement to "lease" his business premises and his license to Tajbakhsh in exchange for a share of the profits. In reality, however, Valiyee completely abdicated his role as a licensed dealer and all the responsibilities attendant thereto, allowing Tajbakhsh to operate under his license without any meaningful involvement on his part. Tajbakhsh purchased all the inventory, conducted and documented all sales, filed all necessary reports with the DMV, and otherwise performed *all* the essential functions of a vehicle dealer. Valiyee performed *none* of those functions, and there is nothing in this record to suggest he provided any meaningful supervision or oversight of Tajbakhsh's business operations. At most, the evidence shows daily visits and casual inquiries by Valiyee as he passed through the Best premises on his way to work on his own, separate business projects—projects that occupied him up to 19 hours a day. Whether we look to the plain language of section 11713(m), or apply Valiyee's narrow interpretation of the statute, it is clear from this record that, over a three-year period from 1991 to 1994, Valiyee permitted Tajbakhsh to "use his dealer's license, supplies, [and] books" so that Tajbakhsh could "engage in the purchase [and] sale of vehicles" within the meaning of section 11713(m).

It is simply not true, as Valiyee claims, that the only conduct in violation of section 11713(m) "amounts to nothing more than the reports of sale being signed by a person other than the dealer himself." Nor is there any basis for concluding that Tajbakhsh was an authorized agent of Valiyee's for purposes of signing and submitting those reports. An agency relationship requires that the principal has the right to control the activities of the "agent," and that the principal has conferred authority upon the agent to act on his or her behalf. (Civ. Code, § 2315; *Malloy* v. *Fong* (1951) 37 Cal.2d 356, 370 [232 P.2d 241].) As far as this record discloses, Valiyee essentially turned his license, books, forms, and business premises over to Tajbakhsh to operate, without limitation, as Tajbakhsh saw fit. There is nothing in this record suggesting that Valiyee retained or exercised any right to control Tajbakhsh's conduct of the dealership business. On the contrary, Valiyee admitted that Tajbakhsh took care of "everything that was going on with the business."

Valiyee's argument that his arrangement with Tajbakhsh was a lawful "independent contractor" relationship is beside the point, and the sole case

Valiyee cites in support of this argument, *Rob-Mac, Inc.* v. *Department of Motor Vehicles* (1983) 148 Cal.App.3d 793 [196 Cal.Rptr. 398] (*Rob-Mac*), does not assist him. In *Rob-Mac*, Division Three of this court held that a licensee was responsible for the misconduct of a salesperson who reset odometers on vehicles prior to sale, in violation of section 11713, subdivision (n), whether the salesperson was an employee or an independent contractor. (148 Cal.App.3d at p. 797.) Indeed, *Rob-Mac* tends to support respondent's position insofar as the holding of that case rests on the fact that the statutory duties of a licensed dealer are nondelegable. (*Id.* at pp. 798-799; see also Civ. Code, § 2304 [agent is without authority to do acts to which the principal is bound to give personal attention].) The point is that the licensee is always responsible for the conduct of the dealership business, whether it is conducted with the assistance of employees or independent contractors. As we have noted, the problem in the instant case is that Valiyee essentially abdicated his responsibilities as a licensee. On this record, the trial court's finding of a violation of section 11713(m) is clearly based on substantial evidence.

Likewise, we conclude there is substantial evidence to support the trial court's finding of a violation of section 11705(a)(3). In relevant part, that statute provides: "(a) The department, after notice and hearing, may suspend or revoke the license issued to a dealer . . . upon determining that the person to whom the license was issued is not lawfully entitled thereto, or has . . . [¶] . . . [¶] (3) Used a false or fictitious name, *knowingly made any false statement, or knowingly concealed any material fact, in any application for the registration of a vehicle,* or otherwise committed a fraud in the application." (Italics added.) The conduct in violation of this provision is closely related to the conduct found to constitute a violation of section 11713(m). That is, over a three-year period, all of the reports of sale from Best that were signed by Tajbakhsh and submitted to the DMV as part of the application for registration of vehicles, falsely represented that *appellant* was the licensed dealer in the sales transactions. As we have noted, appellant was at no time during that three-year period acting or fulfilling his responsibilities as a licensee, having relinquished control of the business operations of the dealership to Tajbakhsh. While it is clear that an "authorized agent" of a dealer may lawfully sign the reports of sale (§ 4456, subd. (a)(3)(C)), that is simply not what happened here. As we have discussed, Tajbakhsh was not acting as an agent for Valiyee. Rather, under his arrangement with Valiyee, Tajbakhsh was allowed to assume the role of a licensed dealer, when in fact he was not a licensed dealer. Yet, in their communications with the DMV, the two men kept up the charade that Valiyee was the licensee who was running Best. In these circumstances, the trial court did not err in finding that Valiyee was responsible for making false statements in the reports of sale, in violation of section 11705(a)(3).

B.  *The DMV Did Not Abuse Its Discretion by Revoking Valiyee's License.*

■   Valiyee recognizes that the proper measure of discipline to be imposed against a licensee for violations of the Vehicle Code is a matter entrusted to the sound discretion of the DMV. (See *Evilsizor* v. *Department of Motor Vehicles* (1967) 251 Cal.App.2d 216, 219 [59 Cal.Rptr. 375] (*Evilsizor*).) He contends, however, that the DMV abused its discretion in this case by revoking his license rather than imposing some lesser form of discipline. He claims the violations proven by the agency were "entirely technical in nature," and points out that he has no prior history of misconduct. The revocation was all the more unjustified, Valiyee contends, because no consumer was injured by the statutory violations in this case. We reject these arguments.

Valiyee's argument that his violations were purely "technical" is simply a reprise of his claim that the proven violations of section 11713(m) and section 11705(a)(3) amount to "nothing more than the reports of sale being signed by a person other than the dealer himself." As we have discussed, this argument mischaracterizes the evidence.

The Legislature has specifically authorized the DMV to revoke the license of a dealer who violates section 11705(a)(3) or section 11713(m). (§ 11705(a)(3); *id.*, subd. (a)(10).) Nevertheless, citing *Rob-Mac, supra,* 148 Cal.App.3d 793, and *Evilsizor, supra,* 251 Cal.App.2d 216, Valiyee contends that the punishment in this case—revocation—is disproportional to the offenses established by the evidence. This, he claims, establishes an abuse of discretion. We disagree.

While it is true the DMV imposed less severe discipline in *Rob-Mac* and *Evilsizor*, it is far from clear that the misconduct of the licensees in those cases was as serious as that of Valiyee. In *Rob-Mac*, the court specifically noted that the decision of the DMV to impose only mild discipline—a 15-day license suspension, stayed for a 2-year probationary period—was undoubtedly affected by the agency's evaluation of the "relative culpability" of the dealer and the salesperson who, in that case, knowingly sold seven vehicles with reset odometers and concealed that fact from the dealer. (148 Cal.App.3d at pp. 796, 799.) Thus, the court upheld the DMV's determination regarding the appropriate level of discipline. (*Id.* at p. 800.)

In *Evilsizor*, the court approved a decision of the DMV imposing a 60-day suspension, all but 15 days of which was stayed during a 3-year period of probation. (251 Cal.App.2d at p. 218.) The evidence showed that on 45

occasions in 1964, the dealer had submitted late reports of sales of new and used motorcycles, causing delays of up to 4 months in the recordation of title, issuance of registration and ownership certificates, and receipt of license plates. (251 Cal.App.2d at pp. 219, 221.) The dealer had also been placed on probation in 1960 for similar violations. (*Id.* at p. 221.) Although the charged practices exposed consumers to potential liability for unlawful operation of a motor vehicle (*id.* at p. 220), there is no indication that any consumer had any actual problems along those lines. In those circumstances, the *Evilsizor* court found no abuse of discretion. (*Id.* at p. 221.)

In this case, Valiyee's violations were arguably more serious than those found in *Evilsizor*, and of longer standing than those found in *Rob-Mac*. The evidence of wholesale relinquishment of his dealer's license to another person for three years, and of falsification of reports to the DMV throughout that period, shows an utter disregard for the whole legislative scheme for regulating motor vehicle dealers and its fundamental purpose of protecting the public from irresponsible and unscrupulous dealers. Valiyee's statements to DMV investigators disavowing any responsibility for the problems experienced by Keith May illustrate just how completely he had abandoned his duties as a licensee. By his conduct, Valiyee has demonstrated that he is not qualified to hold a dealer's license. The DMV's decision to revoke his license in these circumstances was not, in short, an abuse of discretion.

### III. CONCLUSION

For all the foregoing reasons, the judgment of the trial court is affirmed. Costs to respondent.

Hanlon, P. J., and Poché, J., concurred.