Filed 4/30/14  Old Town Redlands v. Panoussis CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| OLD TOWN REDLANDS, LLC,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GEORGE PANOUSSIS,<br><br>Defendant and Appellant. | B245124<br><br>(Los Angeles County<br>Super. Ct. No. BC456353) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mary H. Strobel, Judge.  Affirmed.

―――――

George Panoussis, in pro. per.; the Mellor Law Firm and Mark A. Mellor for Defendant and Appellant.

The Dressler Law Group and Thomas W. Dressler for Plaintiff and Respondent.

―――――

On March 2, 2011, Old Town Redlands, LLC filed a complaint to quiet title against George Panoussis and German Rodriguez. According to the complaint, Old Town Redlands became the fee simple owner of property at 5125 Melrose Avenue in Los Angeles when it purchased the property in July 2002. Old Town Redlands acquired the property subject to a February 1, 1988 30-year lease in favor of Panoussis, and Rodriguez was Panoussis's subtenant. In addition to occupancy under the 30-year lease, which would terminate on February 1, 2018, Panoussis claimed the existence of a second lease entered into on February 1, 1988 between him and Old Town Redlands's predecessor, which "automatically goes into effect upon the February 1, 2018 expiration of [the first lease], . . . terminates on February 1, 2038" and provides Panoussis "an option to purchase the . . . [p]roperty for a fixed price ($365,000) at any time prior to February 1, 2038." On May 21, 2009, Panoussis recorded a copy of the purported second lease. Old Town Redlands alleged that the purported second lease "is a fraud and forgery having absolutely no force and effect . . ." and prayed for a decree quieting title to the property, finding that Panoussis's rights as a tenant, as well as Rodriguez's rights as a subtenant, terminate on February 1, 2018 upon expiration of the first lease without right to extend or purchase.

After a bench trial, the trial court ruled for Old Town Redlands on two independent grounds: (1) the purported second lease, extending the lease period to February 1, 2038 and giving Panoussis the option to purchase, was not "a genuine document actually entered into between the parties whose signatures it bears at or about February 1988," but rather "sometime after 2002, long after [Old Town Redlands's predecessor] had lost any interest in the [p]roperty," and thus did not constitute a valid cloud on Old Town Redlands's title to the property; and (2) even if the purported second lease were a genuine document, Panoussis and Rodriguez were equitably estopped from asserting its validity. Based on these findings, the court entered a judgment quieting title and cancelling instrument, stating that "[t]he [p]urported [second] [l]ease shall be and hereby is cancelled and shall be stricken from the records of the Los Angeles County Recorder" and "[t]itle to the . . . [p]roperty is quieted in favor of . . . Old Town

2

Redlands . . . and against . . . Panoussis and . . . Rodriguez . . . . The court finds that the purported [second] lease with option to purchase . . . is absolutely void ab initio and of no force and effect whatsoever. [Old Town Redlands's] title to the . . . [p]roperty is free and clear of any and all rights, leaseholds, or other interests, legal or equitable, including without limitation the purported option to purchase, arising from or under the [p]urported [second] [l]ease."

Panoussis appealed from the judgment. Because substantial evidence supports the trial court's finding that the purported second lease was not a genuine document, and its attendant determination quieting title to the property in favor of Old Town Redlands free and clear of the purported second lease, we affirm the judgment.[1]

### DISCUSSION

In evaluating the sufficiency of the evidence, "'the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted [that] will support the finding of fact.' [Citations.] [¶] It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact.' [Citations.]" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

During the bench trial, Keith Hagaman, the managing member of Old Town Redlands, testified that, when he inquired about the property in March 2002, he received information from an attorney representing Western States Corporation, Panoussis's company, regarding the first lease expiring in 2018, and Old Town Redlands agreed to purchase the property subject to that lease. Hagaman, however, received no information regarding the purported second lease. Hagaman also spoke to Panoussis several times about the property, and in none of the conversations did Panoussis mention the purported second lease. When Hagaman asked Panoussis to send him the lease on the property, Panoussis faxed him only the first lease and wrote on the cover sheet identifying the faxed document as the "Lease of 5125 Melrose Av." Hagaman also did an independent

---

[1] Only Panoussis appealed from the judgment. Rodriguez thus is not a party to the appeal.

3

review of documents relating to the property, which he obtained from bank files and pleadings from bankruptcy and unlawful detainer actions involving the property, and nothing in his investigation revealed the existence of the purported second lease. Hagaman testified that it was not until 2009 during a deposition of Panoussis in an unlawful detainer proceeding brought by Old Town Redlands against Panoussis on the basis of unauthorized alterations to the property that Hagaman learned of the purported second lease. And, indeed, Panoussis did not record the purported second lease until 2009, well after Old Town Redlands's purchase of the property. According to Hagaman, Old Town Redlands would not have purchased the property had it been aware of a second lease, which purportedly extended the term of the already 30-year lease another 20 years and gave Panoussis the option to purchase the property at any time between February 2018 and February 2038 at the fixed price of $365,000. In addition, Terrilyn Baron, a representative from a bank involved in prior wrongful foreclosure and unlawful detainer actions regarding the property, testified that Panoussis did not mention the purported second lease during those proceedings. This evidence sufficiently supports the court's determination that the purported second lease was not a genuine document and thus did not constitute a valid cloud on Old Town Redlands's title to the property.

Panoussis asserts that other evidence demonstrates the validity of the purported second lease. For example, he cites his own testimony that he told Hagaman about the purported second lease before Hagaman purchased the property. The trial court rejected Panoussis's testimony as not credible. It concluded, "In his testimony, Panoussis had a tendency to hyperbole. Further, Panoussis claimed not to understand many of [Old Town Redlands's] counsel's questions, was argumentative in cross-examination, and at times gave sarcastic responses. Considering [Panoussis's] attitude toward the case and about giving testimony, his personal stake in the outcome, his lack of memory as to certain events, and comparing his testimony to the other evidence received in the case, the [c]ourt does not find Panoussis'[s] testimony regarding the creation of [the purported second] [l]ease . . . to be credible." Panoussis also cites the testimony of Cymbidium Graham, who did secretarial work for him, that she obtained blank lease forms in 1988

4

for the first lease ending in 2018 and the purported second lease, did the typing on both leases in February 1988 and sent a copy of both leases to Hagaman in or around October 2000. The court rejected Graham's testimony as well, giving it "no weight" because, although Graham testified she worked for Panoussis in 1988, she previously had signed a declaration in 2002 in which she stated "'I am an acquaintance of George Panoussis and I took messages, handled his accounting and bookkeeping from 1996 forward.'" According to the court, "[t]his date is significant as Graham earlier testified to assisting with the creation of [the purported second] [l]ease . . . in 1988. Graham admitted to signing the declaration under penalty of perjury." The court also determined that it was "not credible that a seller would commit to a fixed price 30 years in the future and agree that the option at that price would remain open for 20 years." Given the court's credibility findings are reasonable inferences drawn from the evidence, we may not substitute a different view of the evidence for that of the court's. (*Valiyee v. Department of Motor Vehicles* (1999) 74 Cal.App.4th 1026, 1031.)[2]

---

[2] Panoussis spends the vast majority of his appellate briefs arguing the trial court erred in deciding the case on the ground of equitable estoppel. Because the judgment rests on two independent grounds, we need not address Panoussis's equitable estoppel argument because, as noted, the evidence sufficiently supports the court's independent finding that the purported second lease was not a genuine document.

## DISPOSITION

The judgment is affirmed.  Old Town Redlands is entitled to recover its costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


                                        ROTHSCHILD, Acting P. J.

We concur:



        JOHNSON, J.



        MILLER, J.[*]



---

[*]    Judge of the Los Angeles Superior Court, Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.